## Case No. 1,515.

BLANCHARD v. REEVES et al.

[1 Fish. Pat. Cas. 103.] [1]

Circuit Court, E. D. Pennsylvania. Sept. Term, 1850.

PATENTS—INFRINGEMENT — PRELIMINARY INJUNCTION—WHEN GRANTED.

1. Upon motions for preliminary injunction, if, after a careful and impartial examination of the case, the court is of opinion that the plaintiff is entitled by law to the writ, it is their duty to grant it without evasion.

[Cited in Edison Electric Light Co. v. Beacon Vacuum Pump & Electrical Co., 54 Fed. 679.]

[See Goodyear v. Hullihen, Case No. 5,573; Thayer v. Wales, Id. 13,871; Cary v. Lovell Manuf'g Co., 24 Fed. 141.]

2. In order to ascertain the true nature and value of an invention, we must separate the substance and principle of it from its accidents, its essence from its modes. A mere change in the latter, while the former are retained, will

---

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

not acquit the party making it from the charge or guilt of piracy.

[See Blanchard v. Puttman, Case No. 1,514.]

3. The invention of Thomas Blanchard for turning irregular forms construed and explained.

In equity. This was a motion [by Thomas Blanchard] for a provisional injunction to restrain the defendants [Biddle Reeves, Charles Reeves, Isaac B. Eldridge, and others] from infringing upon letters patent granted to Thomas Blanchard, January 20, 1820, for "a machine for turning and cutting irregular forms," and extended, by act of congress for fourteen years from the expiration of the first term. The nature of the invention and of the alleged infringement is fully explained in the opinion of the court.

S. Lewis, for complainant.
W. L. Hirst, for defendants.

GRIER, Circuit Justice. The validity of the complainant's patent having been established by numerous verdicts, and long use, the only inquiry on the present occasion will be whether the machine of the defendant is an infringement of the patent. The question of identity or infringement is often one of difficult solution, and more especially where the subjects to be compared are complex machines, or new combinations of well-known mechanical devices for the purpose of producing certain results. Identity may be said to be a question merely of fact, to be determined by persons skilled in mechanics. But when the comparison to be instituted depends not merely on form or external appearance, but in ascertaining the substance, principle, or mode of operation of the machine invented, and in giving a correct construction to the words of the patent and specification, it is apparent that the question to be answered, though primarily one of mechanics and science, may be also mixed with law, inasmuch as the construction of all written instruments belongs to the court, and not to the jury.

I should have had much less difficulty in arriving at a conclusion satisfactory to my own mind, in the present case, but for the opposite opinions expressed by gentlemen of the highest reputation for learning, judgment, and practical skill in mechanics.

The court might have considered themselves sufficiently excused for any error of judgment, when supported by the opinions of men of such eminence, as may be found on either side of this question. The report of the learned commissioners appointed by this court was held conclusive, in the case in which it was made, and the motion for an attachment peremptorily refused. But, in the present case, the motion is founded on affidavits of other gentlemen of acknowledged ability and acquirements, who fully established a case which would entitle the plaintiff to his injunction. The report of our commissioners in the former case, being assumed to be in the knowledge of the court, has been referred to, in the depositions of complainant's witnesses. Hence we are compelled to notice it in the consideration of this case.

Technically, it may be said, not to be before the court as evidence, but in fact and in its moral effect, if the court believe it correct in its results, they will be unwilling to grant an injunction, on evidence which, though formally sufficient, has not produced conviction on their minds. It is true that the court might have evaded the question by saying we will not grant an injunction in a case where "learned doctors disagree," but wait till a jury shall solve the difficulty. This course, I must confess, coincides, both with my known antipathy to the writ of injunction, as well as natural indolence in such hot weather. But I consider that the complainant has a right to the judgment of the court on the matter presented before them, and the evasion of the question would be an evasion of duty, and if, after a careful and impartial examination of the case, the court is of opinion that the plaintiff is entitled by law to the writ now prayed for it is their duty to grant it without evasion.

Having had before us models of the patented and offending machines, with the testimony and opinion of men of skill and learning, it is almost impossible that any future investigation can add any thing which can throw greater light on the question. The whole case is as fully before the court as it can be. The mere accumulation of opinions on either side will add no weight to the evidence already before us.

Indeed the difference of opinion which appears in this case, seems to result from the construction given to the specification of complainant's patent, and in assuming that "the only method proposed by Mr. Blanchard, is that in which the friction wheel or tram describes a spiral line over the whole surface of the model, and causes the cutters to act in a similar direction."

But we think that this is too narrow a construction of the patent. In every combination of mechanical devices to perform certain functions so as to constitute a new machine or a new and useful invention, it is impossible to enumerate, in a specification, all the various modes by which the machine may be made to operate, so as to produce a useful result. Many of its parts may be changed or substituted by other mechanical equivalents or devices, which either improve or deteriorate its value, while the original idea, principle, or mode of operation of the inventor is manifestly preserved. The inventor usually sets forth what he conceives the best form or mode under which his machine may be used to produce the required result. In order to ascertain the true nature and value of his invention, we must separate the substance and principle of it from its accidents; its essence from its

modes; a mere change in the latter, while the former are retained, will not acquit the party making it from the charge or guilt of pirating the invention.

The machine of complainant is described in the patent as "an engine for turning and cutting irregular forms out of wood, brass, etc., called Blanchard's self-directing machine." I use the words of Professor Treadwell nearly verbatim. The invention consists in arranging and combining together—1st, a model; 2d, a guide; 3d, a cutter-wheel; and 4th, a rough block, in such a manner, and under such relations that when the machine is in operation the guide shall be made to touch successively every part of the surface of the model, and that it shall, at the same time, govern the cutter-wheel, by permitting or causing it to advance or recede from the axis of the rough material, having, in this, a constant relation to the distance of the face of the guide from the axis of the model; by which means the cutters remove, by their own independent motion, from the rough block, every part of the same which projects into or beyond the line or path of the cutters in their revolution, so that the rough block is at length reduced to a certain conformity and resemblance in shape to the model. The mode of producing this result in the concrete, which we have thus stated in the abstract, and the combination of mechanical devices or agents, necessary to reduce it to practice, are fully set forth in the specification.

Now the machine of the defendants contains the four essential members of the complainant's machine, which we have just enumerated, viz.: the model, the guide, the cutter-wheel, and the rough material, combined in the same relations, and affecting each other in the same manner substantially. But, in the subordinate agents or devices by which these four principal members are made to operate, provision is made for the following differences in defendants' machine, viz.: In complainant's machine, the model and the rough block have a continuous rotary motion connected with a lateral motion; the former produced by belts and pulleys, the latter by screws. Under these combined motions the guide turns upon the model in a spiral or helical path, and the cutter-wheel, likewise, removes the superfluous material from the rough material, in a spiral course. In defendant's machine, the model and rough block rotate by an intermittent motion, and move laterally by a rectilinear reciprocating motion, the former being produced by a rag or rachet-wheel, and the latter by a crank.

Now, it is true, that the complainant's specification describes a machine, which effects its result by a combination of lateral and rotary motion, to form a helical course or track in the operation of the machine. But is that of the essence or substance of his invention? or is it not merely an accident to that particular form of the machine

described? Suppose this lateral motion, which, combined with the circular, constitutes the helical, had been reduced from almost nothing to 0, or zero, and the cutter, after performing the absolute circle, has shifted by an intermittent motion, so as to move in parallel rings, would that have altered the principle or substance of the invented machine—to change it, in one of its accidents only, and that for the worse? There could be but one answer to this question. But the only difference in that case is that the rotary motion of model and rough material is reduced to 0, or zero, and changed to an intermittent one. The change of form in the tram, from a circle to the segment of a circle, or mere tangent line, is of no importance—it but accommodates it to its lateral motion. The substitution of the rachet-wheel for the belt and screw, is but a change of equivalents to suit the changed motions of the tram and cutter-wheel. Such a change in the subordinate agents or devices, affecting the motions of the model and guide only in the figure of their path, or the relative lines of their movements, in no case changes the principle, essence, substance, or character of the machine. We can not shut our eyes to the fact that the defendants have pirated the invention of the complainant in all its essential parts. Whether the changes made constitute an improvement of the plaintiff's machine we need not inquire. The defendants have (not in this case only) exhibited singular ingenuity and skill in endeavoring to evade complainant's patent, which possibly might have been better, or at least more profitably employed.

The complainant is therefore entitled to his injunction, on conditions which will be hereafter considered, if necessary.

[NOTE. Patent was granted to T. Blanchard, January 20, 1820, and was renewed by special act of congress of June 30, 1834 (6 Stat. 589, 748), and further by act of February 15, 1847 (9 Stat. 683). For other cases involving this patent, see Blanchard v. Sprague, Cases Nos. 1,516–1,518; Blanchard v. Eldridge, Id. 1,509, 1,510; Blanchard v. Haynes, Id. 1,512; Blanchard v. Beers, Id. 1,506; Blanchard's Gunstock Turning Factory v. Jacobs, Id. 1,520; Blanchard's Gun-stock Turning Factory v. Warner, Id. 1,521.]