CIMIOTTI UNHAIRING CO. et al. v. AMERICAN UNHAIRING MACH. CO.

(Circuit Court of Appeals, Second Circuit. April 9, 1902.)

No. 23.

1. PATENTS—ANTICIPATION—FUR SKINS—MACHINE FOR REMOVING HAIRS.
    The Sutton patent, No. 383,258, for a machine for removing water hairs from fur skins, claim 8, which consisted of a rotary brush whereby fur was pushed down away from the knife of the machine, was not anticipated by the Lake and Covert machines, both of which were commercially unsuccessful.

2. SAME—INFRINGEMENT.
    The Sutton patent, No. 383,258, consisting of a machine for the removal of water hairs from fur skins, was infringed by defendant's machine, which embodied the essential features of the machine described in plaintiff's patent, notwithstanding the brushes in the two machines by which the fur was pushed down away from the knife are not the same.

3. SAME—VALIDITY.
    Where the claim of a patent for an unhairing machine covered a stiff sectional brush operating in a rotary motion, together with a motion upward and forward in front of the skin at the narrow edge of the bar over which the skin was passed, followed by the backward and downward motion, it could not be contended, in a suit for infringement, that the claim was void for lack of novelty, on the ground that the brushes were old, as it was not the brush that gave patentability to the claim, but the novel motion.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This is an appeal from an interlocutory decree sustaining the eighth claim of letters patent No. 383,258, granted May 22, 1888, to John W. Sutton for a machine for plucking furs, and adjudging said claim to be infringed by the appellant. The opinions of Judge Townsend, in the court below, will be found in (C. C.) 95 Fed. 474, and (C. C.) 108 Fed. 82. The opinion of Judge Wheeler will be found in (C. C.) 98 Fed. 297. The errors assigned present all the questions relating to the validity and infringement of the patent.

Frederic H. Betts, for appellant.

Louis C. Raegener, for appellees.

Before WALLACE, Circuit Judge, and COXE and HAZEL, District Judges.

COXE, District Judge. The issues involved in this appeal have received unusual consideration in the circuit court. Two judges have passed upon the questions directly involved in the case at bar and two judges have granted injunctions in other actions involving similar issues. Every opportunity has been accorded all of these defendants to present their defenses and it is safe to assert that nothing bearing,

even remotely, on the controversy has been omitted. The decree at bar was entered by Judge Townsend after a reargument and a full and careful consideration of all the testimony brought into the case since the original hearing. The attack upon the patent has been persistent, uncompromising and ably conducted, the decision sustaining it has been reached after the most mature deliberation and has been acquiesced in and followed by Judges Lacombe, Wheeler and Thomas. It must be admitted, therefore, that the presumption always existing in favor of the rectitude of a decree is enhanced when the decree is entered after such thorough and patient investigation and is sustained by such a weight of authority.

The first commercially successful brush machine for unhairing pelts was made by John W. Sutton. He accomplishes the desired result, as shown in his patent, by dispensing with the blast fan and other forcing devices, theretofore in use, and by substituting therefor mechanical means by which the water hairs are removed.

The invention consists of a power machine which comprises—First: A stretcher-bar. Second: Means for stretching and intermittently feeding the skin over the stretcher-bar. Third: A fixed card above the stretcher-bar near the edge of the same for straightening the hair and fur, holding down the fine fur and permitting the stiff hairs to stand up between the teeth of the card while the skin is fed forward. Fourth: A rotary separating brush below the stretcher-bar and intermittently moved up in front of the bar. Fifth: Mechanism for moving the brush up in front of the stretcher-bar. Sixth: A rotary cutting knife and a vertically reciprocating cutting knife, working in conjunction, for cutting off the stiff hairs. Seventh: Other auxiliary devices designed to facilitate the unhairing operation.

The eighth claim, which is the only one involved, is designed to protect a combination of the first five elements as stated above. It is as follows:

"The combination of a fixed stretcher-bar, means for intermittently feeding the skin over the same, a stationary card above the stretcher-bar, a rotary separating brush below the same, and mechanism, substantially as described, whereby the rotary brush is moved upward and forward into a position in front of the stretcher-bar, substantially as set forth."

The prior art is within unusually circumscribed limits. It is conceded on all sides that nothing found there affects the patent in suit, except the English patent to Lake of 1881, the United States patent to Covert of 1884 and the machine made by Covert in 1886 and introduced in evidence as the "Covert machine."

That both Lake and Covert had in mind an automatic brush machine is evident, but it is equally clear that neither succeeded in embodying his idea in a practical working mechanism. It was not contended in the court below and it is not now contended that the Lake patent is an anticipation, but it is argued that it so limits the claim that appellant's machine is not within its provisions. The circuit court decided that the mode of operation of the machine of the Lake patent is not clear, that it does not show the essential feature of the patent in suit and does not seriously affect the meritorious invention of Sutton. In this we concur. The Lake patent is entitled to scant

consideration and contributes little to the controversy that is not described and shown more clearly in the Covert patent and machine. In view of the radical disagreement between the appellant's counsel and expert as to the way the machine operates and of the additional fact that the interpretations presented for consideration are almost as numerous as the individuals who have sought to aid the court either from the witness stand or the bar, we are unable to reach a definite and satisfactory conclusion as to the modus operandi of the Lake machine. Indeed, there is nothing in the record to show that the Lake machine could successfully unhair a pelt. No one ever saw it operate. It began and ended its uneventful career in 1881. For nearly 20 years it remained nothing but an ambiguous description of incomprehensible drawings. It emerged from oblivion solely to meet the exigencies of this litigation. Were it not for the drawings the specification might be understood and were it not for the specification the drawings might be understood; but united they form a document which demonstrates that its author was either ignorant of the English language or of the essentials of a successful unhairing machine. The Lake patent antedates both Sutton and Covert; since its date the unhairing of pelts has assumed enormous proportions and fortunes have been made in the business, and yet we are asked to believe that here was a machine which could successfully do the work and thus levy an enormous tribute upon the entire art. The inquiry is pertinent, why was it that this machine was permitted to remain unused?

Since the success of the Sutton apparatus every effort has been made by infringers to evade it by introducing specious changes of form and yet, if we are to accept the contention of the appellant, there is an operative machine in existence doing the work as well as the Sutton machine and free to any one who desires to use it. Even within the last few years, when infringers have been in desperate straits and have resorted to every conceivable device, it seems to have occurred to no one that the Lake machine might furnish the necessary means of escape. Is not the presumption almost conclusive that it was not used because it was not usable?

The appellees insist that the Lake device was a failure, that it never worked and is incapable of working. The inferences to be drawn from its desertion almost at its birth and its subsequent abandonment not only by the authors of its being but by everybody else, are strongly in corroboration of this position of the appellees.

The Covert patent and the machine built under it are unquestionably the appellant's best references. In approaching the consideration of these defenses it is important to keep in mind the distinguishing feature of the Sutton mechanism, the change from the prior art which made it successful and produced results which no other device is capable of producing. Covert had all the elements of a workable machine before him, but he did not know how to put them together. Sutton possessed this knowledge. He discarded the revolving metal plate, which Covert thought would operate to carry down the fur out of reach of the cutters, and changed the location and function of the revolving brush so that it permits the water hairs to spring up against the blades while brushing down the soft fur flat on the pelt, out of

harm's way. It is said that these changes were obvious; whether this be so or not will be considered later on; it is enough for present purposes to point out what the features are that appear for the first time in Sutton's device, for to them is due its success.

The essence of the invention is the arrangement of the rotary brush so that it will separate the fur from the undesirable stiff hairs, permit the latter to stand up on the keen edge of the stretcher-bar and brush the former down on the off side of the bar where it will not be cut or injured by the action of the knives. No previous machine had this feature. In the Covert patent an attempt is made to accomplish this result by a combination of a stationary cutter, a revolving brush and a revolving metal wiper. The cutting blade holds the fur and hair down on the "on side" of the stretcher-bar. The brush was probably intended to make a "part" on the edge of the bar, and permit the stiff hairs to stand up alone, but in this it failed. It does not brush the fur out of the way of the revolving knife; this is done by the wiper, which is kept damp, and has a tendency to mat down the fur. The brush does not and cannot brush down the fur on the off side of the bar. The fur as left by the brush is almost at right angles with the position which it should assume to escape being injured by the moving blade. After the brush sweeps over the fur it is left standing in the path of the knife. The wiper is expected to save the fur from mutilation. If the wiper does not do this it is not done at all. Remove the wiper and there is no brushing over "out of reach of the cutting blades." Both of these instrumentalities were necessary to do that which Sutton does with the brush alone; and there is the further difference that the Covert brush and wiper do badly what the Sutton brush does well. On this subject Mr. Benjamin testifies:

"I have carefully experimented with a brush acting in coaction with a pressure or guard-plate as does the Covert brush G and the Sutton brush D2, and I find that it is, as matter of fact, a 'part' destroyer, just as I have said, and that instead of carrying the fur over as Covert apparently supposed it to do, it leaves the fur standing upright. Therefore I think I am quite safe in saying that it was altogether likely that Mr. Covert having made a similar experiment with the machine of his patent, found his brush to be inoperative as a separating and parting device, just as I did, and that thereupon when he came to construct the Exhibit 'Covert Machine' he abandoned the fixed knife blade acting as a pressure plate and likewise the brush and retained only the wiping contrivance f, merely substituting therefor the equivalent form of a felt covered roller. * * * The Covert machine is like a great many of the crude efforts which appear at the beginning of every art and which denote some progress although not the progress which culminates in success."

That the Covert machine would unhair pelts after a fashion is established, but it was a commercial failure and after a short and precarious existence the entire business was abandoned. Nothing was done by Covert after 1885, except, perhaps, to experiment with the "Covert machine," in the spring of 1886. But two machines were built. The first was built in 1883 and was afterwards broken up and destroyed. The second was completed in April, 1886, and is in evidence as Exhibit "Covert Machine." The total number of pelts unhaired by Covert did not exceed 200.

The rotary brushing device of the Covert machine in evidence consists of a cloth (felt or carpet) covered cylinder, which is wholly incapable of doing the work of Sutton's rotary brush. Regarding this machine Covert testifies as follows:

"It was not perfect, I cannot tell you in what respects. In a great many respects. * * * It could not do the work properly in its present state or in the state in which I left it in December, 1885. It was not in a condition to run commercially. It never was in a condition to work commercially. It was in a constant state of progress, improving like every other machine."

Of the exhibit Judge Wheeler says:

"The use of it was open; and mechanically, but not commercially successful, and was on the latter account abandoned."

This finding is fully justified by the proof. It is this abandoned failure, covered with the dust of 14 years of oblivion, which is relied on to defeat the appellees' patent. If it had been able to unhair pelts successfully it meant untold wealth to its owner. Covert knew that the 14 years referred to was a period of great activity in the unhairing business. Do not the same presumptions hold as in the case of the Lake patent? If the Covert machine were of any practical use is it conceivable that during all this period of activity it would have remained unused or that it would remain unused to-day? Covert came nearer than any one else to a successful machine. He had but one more step to take and here he became bewildered and went astray. He missed the apparently simple arrangement of the rotary brush which alone was necessary. It will not do to say that the prior art showed such a brush. Every element of the combination in controversy was unquestionably old, but there was nothing in the prior art to suggest a rotary brush working in the environment shown in the Sutton patent. There was nowhere a rotary brush making a "part" on a keen edged stretcher-bar and brushing the fur down and out of reach of the cutting knives during the moment necessary for the removal of the stiff hairs. It is the presence of this element in the combination which produces the new result and entitles its originator to protection. Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177; Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658; Hobbs v. Beach, 180 U. S. 383, 21 Sup. Ct. 409, 45 L. Ed. 586. An admitted success should not be destroyed by an admitted failure.

Entertaining the opinion that the Lake and Covert machines were incapable of unhairing pelts successfully, that they were commercial failures, unrecognized by the trade and abandoned by their designers, and having reached the conclusion that Sutton was the first to discover the important change which assured a perfect machine, it follows that he is entitled to a construction of his claim which will permit him to hold what he has actually contributed to the art.

The appellant's machine is made under the Mischke patent of January 2, 1900. It has a stretcher-bar, means for feeding the skin over the bar, a stationary card above the bar, a rotary separating brush below the bar and mechanism whereby the stretcher-bar is moved towards and along the brush so that a parting is effected and the fur is brushed down on the "off side" of the bar. In short, there is in the

machine every element of the combination of the eighth claim, the first three being identical, the fourth substantially so, and the fifth being a well-known equivalent. The only difference between the two machines, so far as the combination of the claim is concerned, is that in one the brush moves and the stretcher-bar is stationary, while in the other the stretcher-bar moves and the brush is stationary. The result is identical. The "part" is made and the fur is brushed down away from the knives by the appellant's device precisely as it is by that of the appellees. Both Judge Wheeler and Judge Townsend regarded the appellant's mechanism as the equivalent of the mechanism shown in the patent. It is not easy to see how this proposition can be disputed in the light of the Lake patent, where the two methods of accomplishing the same result are spoken of as identical in principle. Lake's specification says:

"It will be readily understood that the bar B may be fixed or stationary, and the portion of the frame that carries the cutters and brushes may be caused to vibrate with the same movements as those above described, without departing from the nature of the said invention."

The appellant's expert testifies:

"I also find the same arrangement of the fixed stretcher-bar B of the Sutton patent in conjunction with the reciprocating cutter blade C and rotary cutter D is an equivalent for the movable stretcher-bar B of the English patent to Lake, taken in conjunction with the stationary cutter E' and the rotary cutter E. * * * The only difference in the action of these two brushes is that whereas, in the English patent to Lake, the stretcher-bar, with the pelt exposed on its edge, is moved along the brush, in Sutton machine the carding brush D2 moves along the edge of the stretcher-bar, which is in fixed position. This, however, is merely a change of location; the result of the actions is in both cases the same."

The one perspicuous statement which the Lake patent has contributed to this controversy is that a movable bar and fixed brush are the equivalent of a movable brush and fixed bar.

Again, it is urged that the fourth element of the combination must be limited to a rotary separating brush having soft bristles; it must be a cylindrical brush and not a sectional brush. It is said that Sutton describes and claims a brush absolutely incapable of doing the contemplated work and that if a sectional brush having stiff bristles be used, no novelty is shown because such brushes were old. In other words, the claim must be limited to a brush which "is an impossibility."

If construed to cover an operative combination it must at the same time be held to be void for lack of novelty. This proposition is somewhat startling. Whatever may be said of the claim the argument is certainly not open to the criticism that it is lacking in novelty. A new rule will be established in patent law if claims for combinations of old elements are held not to cover those elements as they were known in the prior art because the patentee may have used inappropriate language in describing them. But even if the claim were limited to the precise mechanism described and shown, infringement could not be avoided by such inconsequential changes as the appellant has introduced. It certainly cannot be seriously contended that a rotary brush ceases to be such because the bristles are put on in sections. It is true that the drawings show no longitudinal spaces between the

bristles, but there is nothing in the description indicating that the patentee intended to limit himself in this respect to a brush of any particular pattern. The specification says that the brush is made of "soft bristles" and it is immediately assumed that he meant bristles so soft as to be inoperative and that the bristles now in use on the machines of both parties are not soft but are hard, stiff bristles. The word "soft" in this connection is a relative term. The bristles used by the appellant are soft when compared with the "card clothing or teasels" of the Lake patent, and stiff when compared with the bristles of a hat brush. It is probably true that there are hard and soft bristles, respectively, regarding which no question can arise, but between these extremes there must be a wide debatable territory where the category in which a given brush is placed depends upon a variety of circumstances. Soft bristles may produce a stiff brush, depending upon their length, number and manner of setting; and hard bristles, for similar reasons, may produce a soft brush. Where shall the court look for the standard of comparison in this particular art? Where is the line of demarcation which separates the soft from the hard? Where is the evidence which permits the court to say that the appellant is not using the bristles described and shown by Sutton?

These considerations are suggested to illustrate the impracticability of permitting infringement to depend upon such attenuated distinctions. The question, however, is one that can hardly arise in the case at bar in view of the testimony of Mischke himself, which is as follows:

"I thought that hard bristle brushes were the only brushes that I could use; since then I have found out that I can also use softer brushes, and I do use different brushes, soft and hard, for different kinds of work."

Here is a direct admission of infringement even under the strictest construction advocated by appellant. But, as before stated, such a construction is not required by anything in the patent, the testimony or the law. The appellees are entitled to a fair range of equivalents and it cannot be contended that the appellant's brush is not an equivalent for the brush of the claim.

The argument that the claim is void for lack of novelty if construed to cover a stiff sectional brush, because such brushes were old, loses sight of the distinction, which we have endeavored to point out, that it is not the brush alone which gives patentability to the claim, but the novel motion of the brush, namely, the rotary motion plus the motion upward and forward in front of the skin at the narrow edge of the bar, followed by the backward and downward motion. It would be better to hold the patent invalid at the outset than to destroy it by the illiberal construction for which the appellant contends. Few patents can survive if such criticisms are allowed to prevail.

When the court is convinced that a meritorious invention has been made it should not permit infringers to evade the patent on narrow and technical grounds. "The mere fact that there is an addition, or the mere fact that there is an omission, does not enable you to take the substance of the plaintiff's patent. The question is not whether the addition is material or whether the omission is material, but whether what has been taken is the substance of the invention."

Proctor v. Bennis, 36 Ch. Div. 740. See, also, Machine Co. v. Murphy, 97 U. S. 120, 24 L. Ed. 935; Cantrell v. Wallick, 117 U. S. 689, 6 Sup. Ct. 970, 29 L. Ed. 1017; Reece Buttonhole Co. v. Globe Buttonhole Co., 10 C. C. A. 194, 61 Fed. 959; Blanchard v. Reeves, 1 Fish. Pat. Cas. 103, Fed. Cas. No. 1,515.

We do not lose sight of the appellant's contention that the Sutton patent describes and claims an inoperative structure, that there is no proof that a machine was ever built in accordance with the patent and that the features which made the machine successful were subsequently added and are the subjects of later patents. We canot accede to these propositions; the evidence shows the direct contrary to be true.

The decree is affirmed, with costs.

WALLACE, Circuit Judge. I concur in the result reached in the prevailing opinion, because I am satisfied that the eighth claim of the Sutton patent embodies the essential parts of an unhairing machine which was an improvement upon its predecessors in the prior art, and because I am satisfied that the machine of the defendant embodies essentially the combination of the claim, and contains equivalent devices, so arranged as to perform their combined functions in substantially the same way. I do not think the machine of the Sutton patent a prodigious advance upon that of the prior Covert patent, and I think a higher degree of merit has been attributed to it than it deserves; but it was enough of an advance to be patentable and to deserve protection against an infringing machine which appropriates it.

Sutton's machine was designed for unhairing "seal skins and other furs," and was a failure for unhairing seal skins, the only kind which he specifically mentioned, and the kind which he had prominently in view. He equipped his rotating cutting blade with a carding brush, which he evidently considered an important feature of his machine, as he includes it in the general statement of the essentials of his invention; but the carding brush in operation defeated the utility of his machine. He provided his machine with a stationary card having a comb or set of teeth, the different functions of which he set forth fully in his specifications, but which was practically only useful as a pressure device, and as such no improvement upon the pressure guard of the Covert patent. The improvements upon his machine for which he obtained subsequent patents show that originally it was unnecessarily complex, and to an extent which seriously impaired its efficiency. Indeed, with the carding brush, it was not a more useful machine than Covert's.

In a patent applied for by Sutton in 1894, covering improvements on the patent in suit, No. 536,742, he states that the important feature "is the substitution for the stationary card above the stretcher-bar of a rotary brush," and he makes this statement in the specification:

"When the car which is supported back of the rotary knife in my prior machine [the carding brush with which the rotary knife is equipped] passed the edge of the stretcher-bar it drew out from under the stationary card all the fur and hair on that section of the pelt that were on the edge of the bar. Some of the fur, however, was only partly drawn out, owing to the varying thickness of the pelts, and this partly drawn out fur lay in

the form of a loop which stood out far enough to be reached by the knives, but not far enough to be drawn in by the rotary brush below the stretcher-bar, and so was cut off by the knives. With the rotary brush in place of the stationary card heretofore used by me this looped fur is drawn back and laid down before the knives reach it, so that the cutting of the fur is prevented and only the stiff hairs are removed."

It is fair to say that this later patent does not appear in the record in this action, but appears in the record of the action of the complainant against Derbohlaw; but it is a public record, and as the declaration of the patentee himself it is much more persuasive evidence than any given by the experts for the complainant to exhibit the merits of the original machine of the patent in suit. The machine seems to have had the same imperfections for which the machine of the Covert patent had been condemned. Nevertheless, upon the testimony of the record, it must be accepted as true that with changes which were soon discovered to be desirable, and which did not involve invention, the machine became a commercially successful one.

Although Sutton regarded his carding brush as an essential part of the machine, the eighth claim is for a subsidiary combination in which that device is not included, and as it was not essential in fact it need not be read into the claim by implication, especially in view of some of the other claims of which it is a constituent.

I do not think the Covert patent has been accorded the consideration which it deserves. It has never been considered by the courts below except incidentally by Judge Townsend, in the Bowsky Case (C. C.) 113 Fed. 698, in considering the question whether the omission of the carding brush in the claim of the patent in suit rendered the claim one for a nonoperative combination, and in the present case for the purpose of showing that the Lake patent did not anticipate the patent in suit. The machines built under it by Covert were operative machines, probably about as efficient as was the original Sutton machine. Covert experimented in improving his machine, but he was a man of small means, the machines were expensive, and he became discouraged. In any view which can be taken of this patent, however, it does not anticipate the eighth claim of the patent in suit, or so limit its construction as to permit the defendant to escape the charge of infringement.