CIMIOTTI UNHAIRING CO. et al. v. NEARSEAL UNHAIRING CO.

(Circuit Court of Appeals, Second Circuit. April 9, 1902.)

No. 115.

PATENTS—INFRINGEMENT—UNHAIRING MACHINES.

> The Sutton patent, No. 383,258, for a machine for removing the hairs from fur skins, claim 8, *held* infringed on the ground that the mechanism of defendant's machine, while operating in a somewhat different manner, was the substantial equivalent of that described in the claim, performing the same functions, in substantially the same manner, and producing no better or different results.
>
> Wallace, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Appeal from an order granting a preliminary injunction restraining the appellant from infringing the eighth claim of letters patent No. 383,258, granted to John W. Sutton, May 22, 1888, for a machine for plucking furs.

Albert M. Austin and William A. Redding, for appellant.
Louis C. Raegener, for appellees.

Before WALLACE, Circuit Judge, and COXE and HAZEL, District Judges.

COXE, District Judge. Infringement is the only question involved. The appellant contends that it does not infringe for two reasons, which are stated in the brief as follows:

"First. Because it has no 'mechanism substantially as described, whereby the brush is moved upward and forward into a position in front of the stretcher-bar.' Second. Because the defendant's machine does not contain a 'separating' brush."

The proof of the prior art is substantially the same as in the American Unhairing Mach. Co. Case, 115 Fed. 498. The only difference worthy of comment is that in the case at bar the worthlessness of the machine of the Lake patent is affirmatively established. It now appears that in 1881 over $2,000 was expended by parties in New York to build a working machine under the Lake specification and secure a United States patent therefor. After several months of unsuccessful effort the whole project was abandoned, the promoters not deeming the patent of sufficient value to warrant the payment of the final fee of $20. An attempt was made to unhair pelts with the machine, but holes were cut in them and they were badly damaged. Instead of receiving profits the owners of the machine had to pay damages for the skins they had spoiled.

The court has already decided that Sutton, having made the first commercially successful brush machine, is not confined to the precise mechanism described and shown and is entitled to a fair range of

equivalents. We have held that a stationary brush is the equivalent of the brush of the eighth claim, provided it accomplishes the identical result. Sutton reaches this result by the so-called "planetary motion" of the brush, Mischke by the movable stretcher bar and the appellant by a large segmental brush which is revolved upward and forward into a position in front of the stretcher-bar. The bristles come in contact with the hair and fur on the narrow edge of the bar, form a "part" there and then move downward. The action of the brush permits the stiff hair to stand up and bends down the fur on the off side of the bar away from the knives or plucking jaws. The brush is 9½ inches radius and is mounted on a rotary shaft in fixed bearings, about 5½ inches below the plane of the stretcher-bar, it works intermittently like the patented device, and before the bristles revolve and again contact with the fur, the plucking jaws have done their work in removing the stiff hairs.

The argument that the appellant does not use a "separating" brush proceeds upon lines similar to those discussed in the American Company Case. The Sutton specification contains the following description of this brush:

"The soft bristles allow the stiff hairs to stand, while the quick motion of the brush bends the soft hair in downward direction and brushes it below the stretcher-bar. The rotary separating brush is then quickly moved upward and forward and revolved in front of the skin at the edge of the stretcher-bar, so as to separate the fur from the hairs, brushing down the former and leaving the stiff hairs standing out. The rotary separating brush is then quickly moved backward and downward, so as to carry with it the separated fur."

The appellant contends that this language must be construed literally, that it describes a brush endowed with almost human attributes, a brush capable of selecting the stiff hairs with unerring judgment and permitting them to stand while at the same time it brushes down the soft fur. It requires no technical knowledge to perceive that such a brush never did exist and never can exist. The stiff hairs are much longer than the fur and it is impossible for any rotary brush, hard or soft, to reach the latter without bending down the former. Sutton knew this and every one connected with the unhairing art knew it. He intended to describe the actual operation of the brush as he saw it in practice and not some visionary and untried theory. He was dealing with an actuality, not an absurdity. He intended to say, what is the exact truth, that when the work of the brush was finished the hairs were left standing ready for the action of the knives and that the fur was brushed down away from the knives during the cutting operation. Neither the Covert brush nor any other brush of the former art did this. Not that these brushes were inherently incapable of doing the work, but because no one had perceived the necessity of locating them in such a position in relation to the stretcher-bar that they would not only form the "part" but brush down the fur on the off side of the bar.

Conceding that the description of the action of the separating brush is inaccurate there can be no doubt whatever as to the brush itself, how

it operates and what it accomplishes. This being so it is immaterial that manifestly impossible qualities are attributed to it. In any view the two brushes are equivalents. As pointed out by Judge Thomas:

"Whether the long hairs remain in place awaiting the knife, or spring into place to meet the knife, is non-essential; but that the fur shall be pressed down sufficiently long to allow the knife to meet the long hairs and escape the fur is all essential, and this is effected by the brush." (C. C.) 113 Fed. 588, 591.

Although not argued in the brief the point was made at the argument that the appellant does not have the third element of the claim, namely, "a stationary card above the stretcher bar." The appellant, in place of the card E of the patent, uses an emery covered roller which revolves so slowly that for all practical purposes it may be called stationary. This roller by stretching the pelt gives additional resiliency to the hair, permitting it to spring up while the fine fur continues to be pressed down, to some extent, as it is fed over the edge of the bar. In short, it does what the Sutton card does and in substantially the same way. It certainly performs one of the functions attributed to the card E at line 21 of the third page of the specification, as follows:

"The card is set back from the edge of the stretcher-bar to a distance a little more than one-half of the length of the fur for the purpose of holding the fur and preventing it from moving forward until the forward motion of the skin takes place."

The same considerations which induce the court to hold that the appellant's brush is an equivalent for the brush of the patent, lead to the conclusion that the appellant's emery covered roller is an equivalent for the card of the patent.

Criticism is made of the phraseology of the injunction order. It may be that in endeavoring to describe the appellant's brush and its operation, language has been employed which is unnecessarily broad. There is, however, no doubt as to the machine, the use of which the court intended to forbid. Read in the light of the opinion of the circuit court it is not easy to see how the appellant could have been misled as to the scope of the order, and certainly there can be no misconception in the future regarding its proper interpretation.

The order is affirmed, with costs.

WALLACE, Circuit Judge. I dissent from the prevailing opinion in this case, because I think the defendant's machine does not infringe the eighth claim of the patent.

It does not have the stationary card above the stretcher-bar, which is an element of the claim. The patent describes the stationary card, E, as provided with a comb or carding teeth. It is set back from the edge of the stretcher-bar, and the points of the teeth are close to, but do not touch, the skin. The specification describes its teeth as performing three functions before the pelt reaches the edge of the stretcher-bar. They straighten out the hair and fur as the skin is fed

forward, they permit the stiff hairs to stand up between the teeth, and they hold back the fur and prevent it from moving forward until the forward motion of the skin takes place. The pressure plate of the defendant's machine is not an equivalent of the stationary card of the claim. It has no comb or teeth, is not stationary, and performs the single function of the pressure plate of the Covert patent. The patent industriously makes the stationary card "substantially as described" an element of the claim.

It would seem also that the defendant's machine does not have the separating brush of the Sutton patent, or mechanism for moving it upward and forward into a position in front of the stretcher-bar. The defendant's machine has a carding brush which cards the hair and the fur, and which in operation and effect is analogous to the carding brush of Sutton, which is not an element of the eighth claim, and which he subsequently discarded because in his combination it practically destroyed the efficiency of his machine. The three operations of the Sutton separating brush are these: First, the separation of the fur from the hair; second, the making of a part; and, third, the brushing of the fur downward on the off side of the stretcher-bar. The brush of the defendant's machine does not perform these functions. The machine is so arranged that the hairs are caused momentarily to separate themselves by reason of their resiliency from the fur, and spring back to their natural position more quickly than the fur. It seems unnecessary to discuss in detail the differences between the defendant's machine and the machine covered by the eighth claim of the patent in suit, because it escapes the charge of infringement by the absence of the stationary card.

It will be observed that the order granting the preliminary injunction, which in the prevailing opinion is approved, forbids the defendant from using any unhairing machine containing a combination of five specified elements which are so described in the order as to include a machine made strictly in conformity with the Covert patent.