CIMIOTTI UNHAIRING CO. v. AMERICAN FUR REFINING CO.

(Circuit Court, D. New Jersey.    February 11, 1903.)

1. EQUITY—EVIDENCE IN REBUTTAL—IRREGULAR INTRODUCTION OF EVIDENCE
IN DEFENSE.

A defendant cannot take advantage of his own irregularity in intro-
ducing evidence in defense on the cross-examination of complainant's
witnesses to exclude evidence taken by complainant in rebuttal.

2. PATENTS—SUIT TO RESTRAIN INFRINGEMENT—PARTIES.

In proceedings brought in the joint names of the owner of a patent
and another to restrain infringement, it is of no concern to the defendant
what may be the terms of the agreement between the parties plaintiff
with regard to the patent, whether, as claimed, it is simply an exclusive
license to manufacture, or, as suggested, an unlawful combination in
restraint of trade. All that can be asked is that the suit shall be carried
on by those entitled to do so, of which, with both parties joined, there
could be no question.

3. SAME—COURTS—DECISIONS IN DIFFERENT CIRCUITS.

The courts of one circuit are not controlled by the views taken with
regard to a patent by the courts of another, nor absolved from an inde-

¶ 3. See Courts, vol. 13, Cent. Dig. § 328.

pendent examination of the questions involved; such decisions being simply entitled to proper deference, as those of courts of equal standing and authority.

**4. SAME—INFRINGEMENT—MACHINE FOR PLUCKING FURS.**
The Sutton patent, No. 383,258, for a machine for plucking fur skins, was not anticipated by anything in the prior art, including therein the Lake (British) patent of 1881, and the H. W. Covert patent of 1884, the two machines differing essentially in the character of the brushes employed to depress the fur and in the effect of their operation; also *held* infringed.

In Equity. Suit for infringement of letters patent No. 383,258, for a machine for plucking furs, granted to John W. Sutton, May 22, 1888. On final hearing. See (C. C. A.) 118 Fed. 838.

Louis C. Raegener, for plaintiff.
Henry Schreiter, for defendant.

ARCHBALD, District Judge.* The motion to strike out the expert testimony taken by plaintiffs in rebuttal is not entitled to prevail. The defendants introduced no direct or independent proofs, but in the course of the cross-examination of Carl Mischke, one of their own number, who was called as a witness by the plaintiffs, they offered a copy of the Lake (English) patent of 1881, and drew out from the witness the declaration that the machines they used were constructed in accordance with it. This they now rely upon to defeat the plaintiffs' case, and it was to meet and overcome it that the testimony which is objected to was taken. The introduction of the Lake patent was out of order at the time, and it is to be treated as if had been brought in when it should have been, at the close of the plaintiffs' evidence in chief. This would have cut off much of the so-called cross-examination of Mischke by his own counsel, and compelled the defendants to resort to direct proofs of their own in the ordinary and appropriate way. The irregularity with which they are so chargeable is not to be made the basis for striking out what would otherwise be legitimate and relevant evidence. The Covert patent of 1884 was similarly brought in, while Gustave Cimiotti was under cross-examination, and notice was then given by plaintiffs' counsel that immediately on the close of defendants' case he would take rebutting testimony on the subject of both these patents. The defendants were thus fully put on their guard as to what they would have to meet, and cannot claim to have been in any wise misled or prejudiced.

Neither is it of any concern to us what may be the terms of the agreement between the Cimiotti Unhairing Company and John W. Sutton, the owner of the patent in suit—whether, as contended by the defendants, it amounts to an unlawful combination in restraint of trade, or, as alleged by plaintiffs, is simply an exclusive license upon certain conditions to manufacture, use, and sell machines made in accordance with the patent. These proceedings are not brought to enforce the agreement, but to restrain an alleged infringement, and all that the defendants can ask is that they should be carried on by parties who are entitled to do so, as to which there can be no question, since the

* Specially assigned.
120 F.—43

Cimiotti Company and Sutton are both joined. The suggestion that the latter may know nothing of the suit because the bill is only signed by the former calls for scant consideration. It is brought in his name by responsible solicitors, and that is all we need to know.

The patent in suit, No. 383,258, which was issued to John W. Sutton, May 22, 1888, for a machine for removing the stiff hairs from seal and other furs, has been the subject of extended litigation in the Second Circuit, where it has been uniformly sustained both in the lower courts and the Court of Appeals. Cimiotti Unhairing Co. v. Derbeklow (C. C.) 87 Fed. 997; Same v. Bowsky (C. C.) 95 Fed. 474; Same v. Mischke (C. C.) 98 Fed. 297; Same v. American Unhairing Mach. Co. (C. C.) 108 Fed. 82, 85; Same v. Nearseal Unhairing Co. (C. C.) 113 Fed. 588; Same v. American Unhairing Mach. Co. (C. C. A.) 115 Fed. 498; Same v. Nearseal Unhairing Co., Id. 507; Same v. Comstock Unhairing Co. (C. C.) Id. 524. These decisions are naturally, if not necessarily, of persuasive force here (New York Filter Company v. Jackson [C. C.] 112 Fed. 678; Id. [C. C. A.] Id. 1021); not that this court is controlled by them or absolved from an independent examination of the questions involved, but simply that they are entitled to proper deference as the decisions of courts of equal standing and authority. Mast, Foos & Co. v. Stover Mfg. Company, 177 U. S. 485, 20 Sup. Ct. 708, 44 L. Ed. 856. While, therefore, they have been of material assistance in the disposition of the present case,. I have considered it my duty to examine it on my own account, untrammeled by them; the conclusions which I have reached, although conforming to them, being substantially my own.

The case is by no means free from difficulty, and the margin by which the patent is to be sustained is a narrow one. Sutton was not the pioneer in the art of plucking or unhairing fur by machinery, the first to advance beyond the tedious hand process being the Cimiotti Bros., who secured a patent for what is known as a blast machine in April, 1881. Neither was he the first to conceive of the use of a separating brush in place of a blast, taking that in its largest sense; a patent having been issued in England to William Robert Lake, representing Lambert & Kokesch, of New York, almost simultaneously with that of the Cimiotti Bros., in June, 1881, and H. W. Covert having obtained another in this country in 1884, in both of which a brush or brushing device is shown. Both of these are brought forward as anticipations, and the serious question is whether they do not bear that character.

In the Sutton patent the invention is declared to consist (in a machine for plucking skins) of a fixed stretcher bar, means for stretching and intermittently feeding the skin over it, a fixed card above and near the edge of the same, a rotary separating brush that is intermittently moved up in front of the stretcher bar, an oscillating guard below the stretcher bar, a rotary and a vertically cutting knife working in conjunction for cutting off the projecting stiff hairs, and the mechanism for imparting the appropriate motion to these parts as described. The operation of the machine, as given in the specifications, is substantially as follows: After the skin to be unhaired is set in place with one end over the edge of the stretcher bar, the fixed card above it is

drawn backwards a few times so as to card back the fur and hair, and produce a parting in the fur, and is then set a little back from the edge; another card or brush at the back of the rotary knife then passes in front of the stretcher bar, and draws out the fur and hair; and the rotary separating brush is then moved up in front of the same, and there revolved so as to separate the fur from the hair, brushing the fur downwards, and then itself proceeds in the same direction, carrying with it the fur, which is immediately held in place by the oscillating guard that follows, leaving the stiff upstanding hairs on the edge of the stretcher bar in position to be removed by the action of the cutting knives. While all the parts involved must be regarded as contributing to the general result, the one which seems to be particularly effective is the rotary separating brush, and the chief feature of its action is the downward sweeping movement by which the fur is carried away from the edge of the stretcher bar out of reach of the knives. No one claim of the patent embodies all of the elements mentioned, nor in any is the downward action of the rotary separating brush made a feature, although described in the specifications and illustrated in the drawings. The third claim seems to me the most comprehensive, but the eighth is the one relied upon, and is as follows: "(8) The combination of a fixed stretcher bar, means for intermittently feeding the skin over the same, a stationary card above the stretcher bar, a rotary separating brush below the same, and mechanism substantially as described, whereby the rotary brush is moved upward and forward into a position in front of the stretcher bar substantially as set forth." Nothing is said of the cutting knives in this claim, nor, as just suggested, of the special downward action of the separating brush; but, assuming that the functions of the several parts so assembled are the same as are assigned to them in the specifications, the question is, in what relation do they stand to the prior art?

On the face of things, and at first blush, it must be confessed that we seem to have little if anything different from what is disclosed in the Lake (British) patent of 1881 already referred to. That invention, as stated in the specifications, is said to consist in the general combination of (1) a holding device for supporting the skin, (2) a brushing or combing agent for drawing the fur away from the hairs, and (3) a clipping device to remove them when so separated. Enlarging upon this, the supporting device is described as a bar with slightly rounded edge over which the skin is stretched, set in a reciprocating frame, pivoted on eccentric bearings, so arranged that when the supporting shaft is revolved the [stretcher] bar will be slightly raised and lowered. This bar is caused to vibrate from the "fur opening brushes," employed to separate the fur and hair, to the cutting knives, and back again to the brushes, by means of an actuating shaft and crank, and the operation of the machine is given substantially as follows: The skin to be unhaired is carried over the stretcher bar on an endless apron, being first drawn underneath a compression plate, and in that position is presented to the brushing rolls for their action, by an intermittent feed. These brushing rolls, as represented, are two in number, set one slightly below and in advance of the other, the first, however, being able, as it is said, to be dispensed with. They are made to revolve

in the direction of the hands of a clock, and are described as being covered "with card-clothing, bristles, or teasels," the function assigned to them being to draw the fur over the edge of the stretcher bar and away from the compression plate, allowing the stiff hairs to stand up by themselves. This action of the brushes is effected as the stretcher bar is carried in the direction of the cutting knives, which are stationary, the stretcher bar being made to rise from the one brush toward the other by the action of a cam on the main shaft, and to escape from the intermediate or second brush on its return in a descending concave curve under it by a protuberance on the opposite side of the cam. There is some considerable ambiguity with regard to these motions, but I have taken those which are most favorable to the defendants, and at the same time justified as most natural and probable. Here, then, in a general way, we have all the elements of the patent in suit: (1) A stretcher bar (movable instead of fixed, but none the less an equivalent, as the Lake itself recognizes); (2) an intermittent feed; (3) a stationary card in the shape of a compression plate above the stretcher bar; (4) rotary separating brushes to open the fur and draw it over the edge of the stretcher bar; and (5) appropriate mechanism to move the stretcher bar up and into contact with the brushes, a plain equivalent for the reciprocal motion of the brush into position in front of the stretcher bar in the Sutton. Not only are these elements themselves apparently duplicated in the two patents, but, accepting in the Lake, the upward curve of the stretcher bar, moving forward from one brush to the other, as not only intended, but shown, it is a question whether in the consequent action of the brushes on the fur we have not the very downward sweep on which so much stress is laid as the one effective feature of the patent in suit.

What, then, is there to distinguish the one patent from the other? It is to be found, as it seems to me, notwithstanding what has been said, in the character of the brushes employed, and the different effect of the two devices on the fur and hair. The brushing rolls in the Lake are to be covered, as it is expressly specified, "with card-clothing, bristles, or teasels," and they are to operate by drawing the fur over the edge of the stretcher bar. This is descriptive of a carding and not a brushing action, as in the patent in suit. It is true that the specifications in another part speak of a brushing or combing agent as an element of the invention, which, standing by itself, might imply something different; but even in that connection the purpose is said to be to draw the fur away from the hair, which is, at least, consistent with carding or teaseling; what is controlling being that card-clothing or teasels would be inappropriate for anything else; and, although bristles are mentioned as an alternative, such bristles are to be understood from the connection as would produce the same effect. To strengthen this conclusion, the rolls as portrayed in the drawings are not like brushes, but like cards. The brushing rolls of the Lake patent, therefore, must be accepted as of this special and peculiar character, and intended to act by catching or engaging the mass of fur at the edge of the compression plate as card-clothing or teasels would engage it, drawing it down and over the edge of the stretcher bar, the resiliency of the water hairs being relied upon to make them spring up and be removed by

the cutting knives. If this be so, we have something quite aside from that which is found in the Sutton machine. The action there consists, as we have seen, in parting the fur over the edge of the stretcher bar and brushing or sweeping it down on the off side as the separating brush moves in that direction, the relatively soft bristles of which it is composed conducing to that result. The distinction which is thus made between the two patents, if this be the true construction of them, is a real and substantial one, as experience has proved. While the Sutton machines have been extensively employed from the first, and been eminently successful, there never was an effective Lake machine, and the difference in the character and action of the brushes is probably the reason for it. The Lake was inherently defective, and was abandoned by the inventors, Lambert and Kokesch, after spending some $2,000, along with their attorney Shaw, in trying to produce something that would be operative; so that not only was the application which had been made in this country given up, but the British patent which had been granted was allowed to lapse a few years afterwards for want of the continuing fee. As a foreign patent, it stands simply for what is disclosed, and not for what by some possibility could be made out of it (Seymour v. Osborne, 11 Wall. 516, 20 L. Ed. 33; Hanifen v. E. H. Godshalk Co., 28 C. C. A. 507, 84 Fed. 649; Hanifen v. Armitage [C. C.] 117 Fed. 845); and as a commercial failure there is no particular occasion to treat it any more favorably than we have to. Adopting the interpretation suggested above, which I am convinced is the true one, it is not in any respect an anticipation of the patent in controversy.

What has been said of the Lake is true also to a certain extent of the patent issued in 1884 to H. W. Covert. In that, as in the Lake, we have the same general combination of elements, the distinction between it and the Sutton consisting in the character and operation of the special devices employed to act upon and part the fur and hair at the edge of the stretcher bar. In this machine one of the cutting knives serves as a guard device, pressing down and holding back the fur, except so much as is released each time by the forward motion of the pelt. The layer of fur so released is then acted upon by a segmental rotary brush which passes over it at the edge of and at right angles to the stretcher bar, and draws it forward. As the brush leaves the fur, the hairs are supposed to spring back on account of their elasticity, to be caught and cut by the knives, while the fur is prevented from doing this by a revolving metal plate or wiper (kept damp by passing through a wet brush), which catches and plasters it down on the off side. It will be thus seen that the segmental brush merely opens or parts the fur, and that it is the metal wiper which is relied on to carry it down and away from the knives, the effective downward action of the Sutton brush being committed to that device. It must be confessed that this combination comes very close to the patent in suit, but at the same time I am not persuaded that it is an equivalent. There is this important difference: The Sutton brush engages the fur at the edge of the stretcher bar, and at once, without parting from it, sweeps it down and out of harms way; while the Covert brush, after simply opening and drawing forward a layer of the fur,

passes on and leaves it to be caught and carried down by the wiper, with the serious chance that in the interval between, the fur, like the hair, may also spring back into reach of the knives. The different functions of the agencies so employed and the materially different method in their operation sufficiently distinguish the one patent from the other, and leaves a place by itself for the patent in suit.

There is nothing in the record before me to show whether anything was ever done under the Covert patent, or how far it was found to be commercially successful. Mention was made at the argument of a so-called Covert machine in which a cylindrical roller covered with felt or carpet was substituted for the segmental rotary brush, and it seems to have figured in some of the cases in the Second Circuit. (C. C.) 98 Fed. 297; (C. C. A.) 115 Fed. 498. But it is not brought forward here, and no further notice need be taken of it. According to the views expressed in the cases where it was considered, it was a mere experiment, out of which nothing came.

There being nothing, therefore, in the prior art to affect the validity of the Sutton patent, the question of infringement is all that remains, and this is not involved in any serious difficulty. The machines in use by the defendants have all the elements of the claim in suit, and apparently infringe upon it. The defense set up is that they are constructed according to the Lake patent, and therefore do not; but unfortunately this position cannot be sustained. It is no doubt true that the general form of mechanism there specified has been followed, but it has been admittedly and necessarily modified in several particulars. Some of these changes merely go to relieve the obscurities found in the patent, but others are of a much more radical character. The Lake as a piece of machinery, of course, has operative parts, but whoever employs them is confined to what is there expressly shown. Not only must there be the same elements, but they must operate in the way there specified. You cannot work them over so as to make a new machine, and that is what has practically been done in the present instance. This patent has been dormant for over 20 years, and there has been a corresponding advance in the art to which it belongs. It is easy, now that our eyes have been opened, to see what to do to make it successful, and this is, of course, permitted provided it does not infringe on what others have invented and patented meanwhile. A comparison shows that all the changes which we find introduced in the defendants' machines are in the direction of the Sutton. The single brush employed is moved considerably below the position given it in the Lake drawings and description, and by increasing the irregularities of the cam, and timing them somewhat differently, the downward sweep of the brush is materially increased and changed. But, more than this, in place of the brushing rolls covered with card-clothing or teasels, or what would be the equivalent bristles, as required by the patent, we have ordinary bristle brushes substituted, entirely changing their action and function, and amounting to a clear departure. Whatever view be taken of anything else, this is sufficient to establish that the machines which the defendants are using are not Lake machines, whatever resemblance they may bear in their gen-

eral outline, but are modifications which appropriate the elements of the Sutton patent and infringe upon it.

Let a decree be drawn sustaining the bill, and referring the case to a master.