HALE & KILBURN MFG. CO. v. ONEONTA, COOPERSTOWN & RICH-
FIELD SPRINGS RY. CO.

(Circuit Court, N. D. New York.)

No. 6,984.

1. PATENTS—ANTICIPATION—PRESUMPTION FROM ACTION OF PATENT OFFICE.

The presumption arising from the granting of a patent, that it was not
anticipated by one previously issued, is strengthened where it is shown
that such prior patent was called to the attention of the examiners and
considered before the one in suit was granted, and in such case any doubt
on the question must be resolved in favor of the later patent.

2. SAME—INOPERATIVE PRIOR DEVICE.

A patent for an operative and useful device is not anticipated by a
prior device which is not operative, although the parts and combination
may be similar.

3. SAME—INFRINGEMENT—CAR SEATS.

The Hale patent No. 359,354, for a car seat, construed, and *held* not
anticipated, valid, and infringed.

In Equity. Suit for infringement of letters patent No. 359,354, for
a car seat, granted to Henry S. Hale March 15, 1887. On final hear-
ing.

Samuel Owen Edmonds, for complainant.

Harry E. Knight and George H. Knight (Harris L. Cooke, of coun-
sel), for defendant.

HAZEL, District Judge. This is a bill for infringement of United
States letters patent No. 359,354, granted March 15, 1887, to Henry S.
Hale, and by him assigned to complainant. The patent relates to car
seats in which the seat proper may be automatically tipped or tilted,
and shifted or moved slightly forward by the act of reversing the
back. The defendant is a purchaser and user of the infringing seats.
They were manufactured by the St. Louis Car Company, a Missouri
corporation, which, according to the stipulation found in the record,
assumed the defense herein, and hence may be regarded as the real
defendant. The first claim of the patent, which alone is involved, re-
fers to a combination of four elements, and reads as follows:

"(1) In a seat, the combination of the main frame having cam faces or guides,
a seat-supporting frame having racks and working upon said cam faces to
admit of reciprocation and to tilt the seat, the seat back, and connecting
arms for hinging the seat back to the frame, provided with gear segments
meshing with the rack on the seat-supporting frame, whereby the said gear
segment shifts the seat with a uniform movement and locks the frame against
vertical displacement, substantially as and for the purpose specified."

The defenses relied on are anticipation and noninfringement. The
specification points out that the objects of the patent, briefly stated,
are: (1) To enable the seats having high backs to be reversed in a
limited space, suitable for use in railway cars; (2) to hinge the back
of the seat firmly to the arms locking the same, so as to prevent oscilla-
tion until the back is raised from the seat to a vertical or nearly vertical

¶ 2. See Patents, vol. 38, Cent. Dig. § 73.

position, when the locks unlatch, and the back may then be oscillated by hand; (3) to pivot the seat back arms close to the seat, and by means of a rack and pinion device connect them with the seat carrying frame, "whereby the movement of the seat back will shift the seat in the proper direction with a uniform movement, and at the same time hold the seat frame down and lock it from displacement." The specification states: "The seat frame runs upon cam faces, substantially in the manner set out in my former application herein referred to, for the purpose of tipping or tilting the seat in the act of shifting it." Such an arrangement causes the seat proper to move simultaneously with the back of the seat whenever the back is reversed. The desideratum is to obtain a uniform movement of the back and seat so as to lock the same rigidly after the back is turned. This is absolutely essential to the successful operativeness of the seat. Failure in this respect is apt to jam or wedge the seat, displacing the alignment and the adjusting mechanism, resulting in temporary annoyance, as well as some inconvenience to the manipulator. The reversible car seat, namely, a car seat having a back pivoted to the arm of the seat so as to change the direction of its facing, was not new when the application for the patent in suit was filed. The sole apparent purpose of the invention is to secure automatic uniformity of movement of the frame upon which the seat is placed, by tipping or tilting its front edge upward with a simultaneous shifting movement of the seat forward, and then locking the seat frame so as to prevent displacement. The patent in detail describes the mechanism by which these objects are attained. For the purposes of this action these details need not be specifically set forth. It is enough to briefly describe the car seat and its manner of operation. According to complainant's expert witness:

"The seat-back arms are pivoted close to the seat, and connected by means of a rack and pinion device with a seat-carrying frame, the seat frame itself running upon supporting means, such as guides or cam faces, whereby, as the movement of the seat back is imparted to change it from one edge to the other of the seat, the seat frame will be given a uniform movement towards the edge, which is for the time being, to constitute the front, and will be held locked in such position, the act of moving the seat frame in the manner noted imparting thereto also a tipping or tilting of the front edge."

Notwithstanding the many prior applications found in the record, the prior art is within a very limited field. It is practically conceded on both sides that the only references to which attention need be given are the Gardner patent, No. 250,435, dated December 6, 1881, and the Paulding & Maybeck, No. 281,129, granted about three years before the filing of the application for the patent in suit. The earlier patent relates to reversible car seats, but does not appear to have any of the elements of the patent in suit. It describes a tilting or raising of the seat, and not a forward movement, as specifically pointed out in complainant's structure. The Paulding & Maybeck patent relates to car seats having reversible backs, and, according to defendant, discloses the identical function found in the combination of claim 1 in suit. The differentiating structural features consisted in the manner in which the seat was moved. The movement of the seat was owing to a reversal of its attached pivoted arms from one position to the other; their lower ends engaged between two projecting pins or teeth. Thus,

with the aid of suitable devices, the seat was moved, and locked the back in either of its extreme positions. It is contended by the defendant that the mechanism of this device which moved the seat is the plain equivalent of the rack and pinion movement found in complainant's patent. It is quite true that its operation very closely approaches the patent in suit. The series of diagrams in evidence, prepared by defendant's expert witness Soule, to demonstrate the mechanical equivalency of the different forms of rack and sector arrangements shown by the Hale and Paulding & Maybeck patents, are entitled to more than passing consideration. The adaptation of the segmental pinion and rack, a well-known mechanism, found in the Hale patent, may have been perfectly obvious to the skilled observer of the Paulding & Maybeck structure when attention was called to it. Any doubt which I may have upon that point is resolved in favor of the patent. Certain it is that the rack and pinion device, in combination with the other elements of claim 1, produce a structure which effectively achieves the particular object of the inventor, which, as has been said, was to shift the seat "with a uniform movement, and at the same time hold the seat frame down and lock it from displacement." Furthermore, I am convinced, by a fair preponderance of the evidence, that the practical operativeness of the alleged anticipating patent is successfully disputed. The specification of the Hale patent calls attention to the scope of the Paulding & Maybeck patent in the following language:

"The idea of pivoting the back-supporting arms close to the seat, and shifting the seat thereby, broadly, is not new, as somewhat the same principles are embodied in patent No. 281,129; but my improved device, by which this result is accomplished in so perfect a manner, and whereby additional advantages are attained, is new, as far as I am aware, and renders what was heretofore an unsatisfactory, and, I may say, impracticable, device, now operative with the highest degree of utility and comfort."

The alleged mechanical equivalency of the complainant's structure, and the asserted impracticability of the broader Paulding & Maybeck patent, were directly brought to the attention of the Patent Office. It may therefore be fairly assumed that on comparison of the two patents a conclusion was reached inimical to the defendant's claim. For this reason the presumption of the validity of the patent here considered is entitled to increased weight. The conclusion that the two devices are not equivalents is strongly supported by the action of the Patent Office, and, accordingly, all doubt upon the controverted question of anticipation must be resolved in favor of the patent. Fraim v. Keen (C. C.) 25 Fed. 820; Goodyear Co. v. Gardner, 4 Fish. Pat. Cas. 224, Fed. Cas. No. 5,591. It has been suggested that the alleged anticipatory patent was incapable of practical operation. A contrary view does not satisfactorily appear from the proof. An assumption of successful operativeness is negatived by the evidence. Upon this point complainant's expert witness Hains lays much stress. He testifies regarding the Paulding & Maybeck patent, in substance, that the connections between the lower ends of the cams G, and the rocker frame are so loose that a uniform movement is impossible, and that a vertical displacement of the rocker frame is liable to occur in turning the back of the seat. This evidence based upon the Paulding & May-

beck specification and drawing, tending to show that the structure there described was incapable of successful operation, is entitled to weight, especially in view of its corroboration by other testimony in the case. Some doubt even as to its operativeness may be found in the expressions of the defendant's witness, Forney, who testifies that in 1883 he saw a model seat constructed by Paulding & Maybeck. He remarked to persons present when the model was exhibited that he could get up a better car seat himself, and subsequently obtained a patent for an improvement. It also appears by the record that in about the year 1885 the Paulding & Maybeck seat was used as an experiment for a short time by the New York Central Railroad to ascertain its practicability and usefulness. Soon afterwards it disappeared from the market, and the Forney seat and complainant's structure went into extensive use. The witness Forney admitted at the hearing that "there might be practical objections to the Paulding & Maybeck seat which would develop in practice." The conclusion reached upon this point is that the defendant has failed to establish the practicability of the structure claimed to anticipate the patent in suit, and, as the idea of a more perfect car seat has been successfully embodied in the patent by Hale, he must be acknowledged the real inventor. As the prior invention upon which defendant relies was not capable of practical operation, the combination of old elements found in the Hale patent, correlated for adaption to a new and useful purpose, is entitled to the protection of the patent laws. General Electric Co. v. Wise (C. C.) 119 Fed. 926; Cimiotti Co. v. American Co., 115 Fed. 498, 53 C. C. A. 230; American Graphophone Co. v. Leeds (C. C.) 87 Fed. 873.

Infringement. An analysis of claim 1 of the Hale patent, together with an examination of the defendant's structure, discloses the infringement by which complainant feels aggrieved. True, there are dissimilar features in defendant's structure, but the details in construction, while differing in appearance, are functionally the same. Substantially the same combination of elements arranged as presented in claim 1 are found in defendant's structure. The infringing car seat has a main frame, having cam faces or guides, slightly inclined, to enable the rocker frame to be reciprocated as it moves backward and forward. A seat-supporting frame and suitable rack are adjusted to reciprocate upon the cam faces or guides so as to tilt or shift the seat. It also appears that the arms of the seats are connected with the main frame, and are provided with gear segments meshing with the rack on the seat-supporting frame, which is adapted to uniformly move or tilt the seat, locking the frame against vertical displacement. The patent in suit is not limited to the precise construction described in the claim, and therefore the different appearances of the mechanism are wholly immaterial.

I conclude that claim 1 is infringed by the defendant, and that the complainant is therefore entitled to an accounting, with costs. The patent having expired, no injunction will issue.