BROWN et al. v. REED MANUF'G CO.

(Circuit Court, N. D. New York.   June 5, 1897.)

1. PATENTS—CONSTRUCTION OF CLAIMS—INFRINGEMENT.
    A claim for a pan or other vessel having its perpendicular sides provided with a "continuous loop" to form "continuous parallel flanges" and an intermediate "continuous zinc plate" is infringed by a vessel made of two tin plates and two zinc strips, soldered together, because the vessel is too large to be made conveniently of one piece.

2. SAME—IMPROVED PANS.
    The Brown patent, No. 480,555, for an improved pan or other vessel, construed, and held valid and infringed.

This was a suit in equity by Tristam D. Brown and others against the Reed Manufacturing Company for alleged infringement of a patent relating to pans and other vessels.   On final hearing.

F. H. Hamlin, A. C. Paul, C. G. Hawley, and C. H. Duell, for complainants.

George B. Selden, for defendant.

COXE, District Judge.   The character of the invention of the Brown patent, No. 480,555, is sufficiently indicated by the claim.   The claim is:

"As an improved article of manufacture, a pan or other vessel having its perpendicular sides provided with a continuous loop or made full and bent to form continuous parallel flanges or creased edges all in one perpendicular piece,

and an intermediate continuous zinc plate or strip in said groove or recess, and having its edges secured by said flanged or creased edges, whereby it is held rigid in said groove or recess, substantially as set forth."

As intimated at the argument I have no doubt whatever on the question of infringement. The defendant's device is almost an exact reproduction of the structure of the patent, the only difference being that the defendant's wash boiler is made of two tin plates and two strips of zinc. This is so because the vessel is too large to be made conveniently of one piece of tin. When joined together to form the boiler, these plates have a continuous groove which holds a continuous zinc strip. It is wholly immaterial that at one time these parts were separate. When united to make the boiler they form a continuous piece without break or interruption. If the exceedingly narrow construction of the defendant be adopted no structure would be within the claim unless composed of one piece without joint of any kind. An infringer would only need to show that the sides of his vessel were at one time disunited, to escape. There is nothing in the prior art or in the patent which requires such a construction. Not only would it eviscerate the claim, but it would lead to the absurd result that a tin cup would infringe, whereas a tin boiler, too large to be made of one piece, but constructed upon precisely similar principles, would escape infringement.

It seems clear beyond question that the defendant's strip is "continuous" in a mechanical and an electrical sense and also according to the ordinary dictionary meaning of the word. Many pieces of twine may be tied together to form a continuous kite string, many different breadths may be united to form a continuous carpet and surely two pieces of zinc may be soldered together to form a continuous strip. The patentee probably used the word "continuous" to distinguish his invention from prior patents where separate zinc disks wholly disconnected from each other were used.

Upon the question of patentability it is unnecessary to review the prior patents introduced by the defendant, as none of them shows the construction of the Brown patent. That the device of the claim is superior to anything in the prior art, and obviates many of the difficulties then existing, is clearly established. If there were any doubt on this subject the course of the defendant has removed it. The defendant is the owner of the Reed patent, No. 434,464, which covers an anti-rust pail having a strip of zinc extending across its bottom and up its sides. But the defendant makes the Brown and not the Reed vessel. At the argument it was asserted that there was no advantage in Brown's location of the zinc, and that the strip could as well run vertically as longitudinally. The defendant's counsel was asked by the court why, if this were so, the defendant did not use the vertical strip? He answered that he thought it could and would do so, but was not then prepared to give a definite answer. The complainants' counsel stated that they wished nothing more than the protection of their continuous zinc strip construction, and offered the defendant a fair decree waiving all claims for profits and damages. After due deliberation and consultation with the defendant's officers this offer was refused.

The conclusion cannot be resisted that the defendant agrees with the complainants as to the value of the invention, and clings to it with all this pertinacity because the Reed structure cannot compete with it in the market. Decree for complainants.