RYAN v. METROPOLITAN JOCKEY CLUB et al.

(Circuit Court of Appeals, Second Circuit. March 2, 1906.)

No. 67.

PATENTS—INFRINGEMENT—STARTER'S GATE FOR RACE TRACKS.

The Ryan patent, No. 553,740, for a starter's gate for race tracks, claim 1, is clearly limited to a gate pivoted so as to swing down between the supports and to latches for holding it between the supports when depressed, and is not infringed by a device having neither of such features.

Appeal from the Circuit Court of the United States for the Eastern District of New York.

For opinion below, see 139 Fed. 579.

This is an appeal from a decree of the Circuit Court of the Eastern District of New York dismissing the bill, on the ground of nonin-

fringement, in an equity action founded on letters patent No. 553,740, granted January 28, 1896, to the complainant for a "starter's gate for race tracks."

W. P. Preble, Jr., for appellant.

Arthur v. Briesen, Hans v. Briesen, and Otto V. Schrenk, for appellees.

Before TOWNSEND and COXE, Circuit Judges.

COXE, Circuit Judge. The patent is designed to secure a fair start for the horses on a race track.

The specification says:

"The object of this invention is to provide a practical device for the use of the race-starter which will afford a visible barrier across the race-track until removed by the starter, which is done instantly when a fair start is had, so that the riders of horses on the track as they pass the starter's stand can see the barrier ahead of them, and if it is not moved will be warned to stop, which they can do before reaching the barrier, which is in the form of a gate hung so as to rock across the track."

The specification then proceeds to describe a gate or transverse barrier formed of strong canvas or other material having pliability and necessary strength. It is, however, deemed essential, if the gate be formed of textile material, that it shall be strengthened with a rope binding and also with intermediate ropes. The length of the gate is such that a space will be afforded at each end between said ends and the pair of posts whereon the gate is hung.

The mechanism by which the gate is hung on its supports and manipulated is described with great detail and the specification proceeds as follows:

"If the horses all align their noses above the scratch-line when said imaginary line is reached, the starter instantly shifts the lever 24 into the position shown in Fig. 5, which will release the gate 13, and it will at once rise, so as to clear the track, this occurring in plain sight of the riders of the horses, who can readily observe the gate without looking sidewise, and for the notification of all interested in the race the starter rocks the flag into a pendent position when he shifts the lever which supports the flag. In case the riders of the horses make a false start, the gate 13 is allowed to remain in a depressed condition, which will bar the passage of the horses, and the riders must return to the starting-point for a fresh start."

The first claim is alone involved. It is as follows:

"1. In a horse-starting apparatus for race-tracks, the combination with supports at opposite sides of the track, of a gate having its end bars pivoted at one end to the supports so as to swing down between the said supports, springs for normally holding the gate swung up, latches for holding the gate depressed between the supports, and means for releasing the latches, substantially as described."

It will be observed that the object of the patentee was to provide a gate or barrier sufficiently strong to bar the passage of the horses in case a false start is made. The use of the apparatus as indicating the line for a standing start is not suggested.

The claim is for the combination in a horse-starting apparatus of the following elements: First. Supports at opposite sides of the track. Second. A gate having its end bars pivoted at one end

to the supports so as to swing down between the said supports. Third. Springs for normally holding the gate swung up. Fourth. Latches for holding the gate depressed between the supports. Fifth. Means for releasing the latches.

The defendants' device consists of two ribbons of tape connected by cross pieces of the same material at intervals of five feet. It is in no sense the resisting barrier of the patent, does not operate to hold or stop the horses and snaps like gossamer when subjected to their impact. Its object is to secure perfect alignment of the horses and it is used as string, tape, wire or a straight line drawn across the track has been used for years when it was necessary that the contestants, whether men or horses, should start abreast at the same moment. It does not swing down between the supports or have latches for holding the gate depressed between the supports, the end bars being pivoted at one end so as to swing down against the supports, which limit the arc of the swing.

Assuming that the patentee has succeeded in carrying the date of his invention back of the Forbes and Sullivan applications, a proposition which is by no means free from doubt and which we do not decide, it does not follow that the patent in suit is a pioneer. The court can almost take judicial notice of the fact that it was not broadly new to stretch a tape across a track to indicate the starting or finishing line of a race, and the record shows numerous gates, pivoted between posts and operated by means of weights and springs to swing up so as to allow horses to pass under them. To widen these structures and adapt them for use on a broad track so as to permit a large number of horses to pass under instead of one or two may have required ingenuity and invention, but such adaptation would hardly entitle the inventor to rank as a pioneer. But be this as it may the courts must take the claims of patents as they find them and are not permitted to reconstruct them by adding to or subtracting from their terminology. The court is not concerned with the motives which induced the patent officials to require or the patentee to accept the claim. It is enough that it is in the patent and that it is couched in language so plain and unambiguous as to leave no room for construction. The courts must deal with claims not as they might have been but as they are.

The claim in question is clearly limited to a gate pivoted so as to swing down between the supports and to latches for holding it when depressed between the supports. The defendants do not use such a gate.

We think the Circuit Court was right in holding that the claim was not infringed.

The decree is affirmed.