## WHITLOCK COIL PIPE CO. v. MAYO RADIATOR CO.

(Circuit Court of Appeals, Second Circuit. April 14, 1920.)

### No. 173.

**1. Patents ⊛⊐328—843,864, for motor car radiator, valid and infringed.**

The Brinkman patent, No. 843,864, for a cooler or radiator for motor cars, *held* valid, and as disclosing the first honeycomb construction of an automobile radiator is entitled to a liberal range of equivalents; also *held* infringed.

**2. Patents ⊛⊐157 (1) — "Continuous strip" may consist of separate strips soldered together.**

In a claim for a "continuous strip" of metal, "continuous" should be taken in a mechanical sense, and two pieces of metal contiguously placed and soldered together may be considered as a continuous strip, when together they function like one strip.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Continuous.]

⊛⊐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the District of Connecticut.

Suit by the Whitlock Coil Pipe Company against the Mayo Radiator Company. Decree for defendant, and complainant appeals. Reversed.

For opinion below, see 257 Fed. 752.

Plaintiff owned and sued upon the three claims of patent to Brinkman, No. 843,864, dated February 12, 1907, application filed January 29, 1903. The invention is for a "cooler." The article described finds its use as a radiator for motor cars driven by gasoline engines. Water in the jacket of such engine is cooled by going through passages or conduits, whose external surface is as freely as possible exposed to the air. Earlier and familiar types of radiators are illustrated by the Daimler apparatus (British 10,257, of 1898), which is (in the language of a claim) a "vessel adapted to receive the water, with tubes passing through said vessel and being opened at both ends, and with means for effecting a strong draft through said tubes."

In various forms it was art prior to Brinkman to make a radiator of tubes of appropriate length spaced apart and parallel with each other, and fixed at each end in a wire or metal screen or holder into which the tube ends were soldered or otherwise appropriately made watertight. Into the box thus interrupted by tubes which were air passages water flowed, and passing between the tubes was cooled. Brinkman's effort was, according to his specification, to "simplify the construction, decrease the weight, and reduce the cost of this class of refrigerating apparatus, and at the same time increase its efficiency * * * by constructing [the refrigerating section of a radiator] from a continuous strip of sheet metal which is crimped or corrugated, so that when the corrugated sheet is bent or returned upon itself at regular intervals the corrugations will match and form the opposite sides of a tubular space for the passage of air. But * * * the sheet at every alternate interval is corrugated in opposite directions, in order that every alternate fold of the sheet will produce a narrow, continuous, serpentine passage through which water may flow in a thin layer in contact on both sides with the walls of the air tubes." His water passage was made of appropriate and desired width by "offsetting" the edges of the corrugated metal strip and bringing said set-off edges into soldered contact. This construction produces what is fairly described as the "honeycomb" or "cellular" type of radiator, fabricated of thin sheet metal, preferably copper. It avoids the construction of a framework of pipes held by terminal wires or sheets in spaced relationship.

Brinkman in his specification declared that he did not confine himself to any particular shape of corrugations, and his first and most general claim is as follows: "In an apparatus of the class described, the combination with a water chamber 5 and a water chamber 7, of an interposed refrigerating section, consisting of a continuous strip of corrugated sheet metal doubled upon itself in a series of folds, with the ends of the folder sections attached to said water chambers, and inclosing a series of restricted water spaces communicating at the ends of the folds with said water chambers, substantially as described."

The second claim varies from the first in specifying the "offset edges" of the strip of corrugated metal, and the third is as follows: "In an apparatus of the class described, the combination with upper and lower water chambers, of a refrigerating section between said water chambers, said refrigerating section consisting of restricted water passages between said chambers, said water passages having inclosing walls of sheet metal with their edges offset in opposite directions, brought into contact and soldered together, and of a series of parallel air passages between said water passages and transversely thereto, formed by the contact of said inclosing walls."

Defendant's radiator is likewise composed of corrugated metal, but the corrugation or bending is so acute that, when one bent strip is fitted to another, a series of square air passages is produced, but the water passages result from offset edges as described by Brinkman. The trial court held the patent invalid, but, if so construed as to be valid, not infringed. Plaintiff appeals.

Harrie E. Hart, of Hartford, Conn. (Robert H. Parkinson, of Chicago, Ill., of counsel), for appellant.

Franklin G. Neal, of New Haven, Conn., for appellee.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] That broad claims do not broaden invention, nor protect what (usually in the light of subsequent competition) the patentee thinks he invented, is a sound rule (Lovell v. Seybold, etc., Co., 169 Fed. 288, 94 C. C. A. 578);[1] and the dismissal below was rested on this doctrine. The evidence submitted, however, compels us to find that this case is not within the rule. Whether Brinkman made an invention, and, if so, the grade or importance thereof, depends, not only on what he did, but when he did it; for it is common knowledge that ever since about the time of his filing date inventors of all ranks have been very busy with motor cars and their appurtenances. The trial court made no finding as to date of invention, but we perceive no difficulty in assigning the early summer of 1901 as the time when Brinkman physically embodied his fundamental idea in a section of radiator. Commercial construction followed in the fall of 1902.

In 1901, so far as this record reveals facts, Brinkman was the first to make or propose to make a radiator suited for the hard service of a motor car out of thin sheet metal, using the corrugations thereof, connected or slightly separated as desired, to form tubes or passages for both air and water, and to obtain by attaching one corrugation to another and indefinitely repeating the conjunction a structure of any desired size that may almost be called integral and is both strong and light. The rank of an invention often depends on the nature or extent of the art which may be invoked to explain or limit it. Corrugated sheet metal had been used to facilitate the condensation of steam (Ljungstrom, No. 574,157), and that art may be admitted as cognate; but Brinkman first made the honeycomb radiator of an automobile, and he therefore stands "at the head of a class [and] is entitled to a liberal range of equivalents" (Lamson, etc., Co. v. Hillman, 123 Fed. 423, 59 C. C. A. 517), unless defeated by some weakness other than the nature of his inventive thought.

The only prior art worthy of mention is Maybach, whose several foreign patents are earlier than his United States patent No. 709,416. That device may be described, in words largely taken from specifications, as a means of determining and maintaining a spaced arrangement of pre-existing tubes; the air going through the tubes and the water through the spaces. It may be as good a radiator as that described in the patent in suit, but to us it does not even suggest the "honeycomb" construction.

---

[1] This ruling was long ago made by Blatchford, J., in Masury v. Anderson, 11 Blatchf. 165, Fed. Cas. No. 9,270. He added that if, while operating under his patent, the patentee "at one time insists on too much, or at another on too little, he does not thereby work any prejudice to the rights actually secured" to him by his patent.

Unless the patent be limited to the exact device, or rather to the mode or method of making the machine set forth in the specification, infringement cannot be denied; and indeed we think it is not denied.

Such limitation is asserted, because the first and second claims specifically define the "refrigerating section" of the cooler as "consisting of a continuous strip of corrugated sheet metal"; and the specification tells at considerable length how the sheet can be doubled upon itself and the operation repeated. If the radiator of a large truck were thus fabricated, it would require a metal strip 550 feet long, and Brinkman never made his machines in that way; he has always taken strips of convenient length and soldered them together when in place, and so does the defendant.[2]

[2] Accordingly defendant asserts that upon "the continuous strip of sheet metal the whole patent is predicated." The argument is not without strength, but cannot prevail; for the matter is not in the ordinary sense one of construction whereof the rules have been recently restated in Fulton Co. v. Powers, etc., Co. (C. C. A.) 263 Fed. 578. The construction here appropriate is purely verbal, for if the substance of invention as described be regarded, the defendant is plainly within any reasonable range of equivalents, as that phrase is so well defined by Sanborn, J., in National, etc., Co. v. Interchangeable, etc., Co., 106 Fed. 710, 45 C. C. A. 544; and if we have rightly apprehended the essential nature of this invention it is equally certain that defendant has taken "the substance" thereof. Cimiotti, etc., Co. v. America, etc., Co., 115 Fed. 504, 53 C. C. A. 230.

Thus the final question is whether the unfortunate phrase, "continuous strip" of metal, puts claims 1 and 2 in the list of "patents * * * couched in language so plain and unambiguous as to leave no room for construction." Ryan v. Metropolitan, etc., Club, 144 Fed. 699, 75 C. C. A. 515. We think not; and as matter of verbal interpretation we agree with Coxe, J. (Brown v. Reed Mfg. Co. [C. C.] 81 Fed. 48; appeal dismissed 96 Fed. 1005, 37 C. C. A. 665), that "continuous" may and here should be taken in a mechanical sense; and two pieces of metal contiguously placed and soldered together may be considered as a continuous piece when together they function like one piece.

Acceptance of this signification for "continuous" renders it unnecessary to inquire along somewhat broader lines whether, considering that generic inventions in their first embodiments frequently work imperfectly, Brinkman's severing of metal sheets was more than that "mere readjustment" thought immaterial by this court in Scott v. Fisher Co., 145 Fed. 922, 76 C. C. A. 447, or whether defendant has "used the idea of the patent modified only in respects which the patentee left open for modification." Van Kannel, etc., Co. v. Straus, 235 Fed. 137, 148 C. C. A. 631. It also avoids consideration of the third claim.

Decree reversed, with costs, and the cause remanded, with directions to sustain the claims in suit and grant the usual interlocutory decree.

[2] We have not overlooked Brinkman's later patent, No. 779,581, but think it relates to a different type of radiator, and that it contains no language inconsistent with plaintiff's position as to the patent in suit.